# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| STACEY J. THOMAS on behalf of ) | |
| STEPHEN W. WILDERMUTH, deceased, ) | |
|       Plaintiff, ) | |
| ) | |
|      v. ) | |
| ) | CAUSE NO.: 1:12-CV-160-JEM |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
|       Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stacey J. Thomas on behalf of Stephen W. Wildermuth on May 23, 2012, and Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 19], filed by Plaintiff on October 15, 2012. Plaintiff requests that the decision of the Administrative Law Judge be reversed or remanded for further proceedings to change the disability onset date. On December 21, 2012, the Commissioner filed a response, and on January 22, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On May 17, 2006, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on November 6, 2005. Plaintiff's applications were denied initially and upon reconsideration. On October 11, 2007, Administrative Law Judge ("ALJ") Yvonne K. Stam held a hearing at which Plaintiff, with counsel, and a vocational expert ("VE") testified. On February 15, 2008, the ALJ issued a decision finding that Plaintiff was not disabled. On August 27, 2008, the Appeals Council remanded the case to the ALJ to resolve two issues: an evaluation of the severity of Plaintiff's obesity and of Plaintiff's

subjective complaints and pain. On October 20, 2010, the ALJ held a second hearing and obtained testimony from a VE. Because Plaintiff was deceased, his daughter, Stacey Thomas, testified as a witness. Plaintiff's attorney was also present. On March 2, 2011, the ALJ issued a decision finding Plaintiff not disabled from the period of November 6, 2005, through March 25, 2008, and denying DIB for that time period.

    The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant did not engage in substantial gainful activity since November 6, 2005, the alleged onset date of disability (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, the claimant has had the following severe impairments: right hip problems/status post total right hip arthroplasty, COPD/chronic bronchitis, obesity, a hernia, and left lower extremity problems. Beginning on March 26, 2008, the claimant also had an additional severe impairment: lung cancer (20 CFR 404.1250©).

4. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. From November 6, 2005, through March 25, 2008, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he was only occasionally able to balance, stoop kneel, crouch, crawl, and climb ramps and stairs and he was not able to climb ladders, ropes, or scaffolds at all.

6. Beginning on March 26, 2008, the claimant did not have the residual functional capacity to perform even sedentary work as defined in 20 CFR 404.1567(a) on a regular and sustained basis. He was not able to work full time or satisfy the attendance requirements of competitive, remunerative work due to his coughing spells with hemoptysis, chest pain, and fatigue.

7. Prior to March 26, 2008, the claimant was capable of performing some of his past relevant work (20 CFR 404.1565).

8. Beginning on March 26, 2008, the claimant's residual functional capacity would have prevented him from being able to perform all of his past relevant work (20 CFR 404.1565).

9. The claimant was an individual closely approaching retirement age on March 26, 2008, the established disability onset date (20 CFR 404.1563).

10. The claimant had at least a high school education and was able to communicate in English (20 CFR 404.1564 and 416.964).

11. The claimant did not have work skills that were transferable to other occupations within his residual functional capacity for the period beginning on March 26, 2008 (20 CFR 404.1568).

12. Considering the claimant's age, education, work experience, and residual functional capacity for the period beginning on March 26, 2008, there were no jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560© and 404.1566).

11. The claimant was not disabled prior to March 26, 2008 (20 CFR 404.1520(f)) but became disabled on that date and continued to be disabled until his date of death on May 6, 2009 (20 CFR 404.1520(g)).

On March 20, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.    Medical Evidence**

Plaintiff was born on January 30, 1943. He was 62 on the alleged onset disability date.

In July 2005, Plaintiff was seen by physician Dr. Jonathon Alley for knee and hip pain and was diagnosed with worsening osteoarthrosis. Radiologist David Powell found severe osteoarthritic change in Plaintiff's right hip. Plaintiff returned to Dr. Alley several times throughout 2005 and received diagnoses that year of worsening osteoarthrosis, chronic bronchitis, dysuria, atherosclerosis, edema, and acute upper respiratory infections.

On September 15, 2005, Plaintiff was examined by orthopedic surgeon Dr. Barry Liechty, who found that Plaintiff had severe osteoarthritis in his right hip, arthritis and deformities in his left foot, deformities in his right foot, edema of the foot and ankle, instability in his right knee ligament, and a history of pulmonary emboli.

On September 19, 2005, Radiologist Dr. Michael A. Kinzer performed a chest x-ray on Plaintiff and found evidence of chronic obstructive pulmonary disease (COPD) but no active disease.

On November 8, 2005, Plaintiff was admitted to the hospital for a right hip replacement. Plaintiff weighed 260 pounds. Plaintiff's preoperative diagnoses included severe osteoarthritis of his right hip, chronic lymph edema, and a history of pulmonary embolism, hypertension, asthma, and left foot joint arthritis. On November 14, 2005, Plaintiff was discharged from the hospital, and post-operative x-rays showed acceptable alignment of the replaced hip.

Dr. Liechty saw Plaintiff for numerous follow-up exams between January and May 2006. On April 28, 2006, Dr. Liechty set a tentative date of June 1, 2006, for Plaintiff to return to work and concluded that Plaintiff was in better shape than he had been prior to his hip surgery.

On May 28, 2006, Plaintiff saw Dr. Alley for pain in his left foot, ankle, and leg, and was diagnosed with osteoarthrosis. Dr. Alley stated that Plaintiff could participate in normal physical activities without restriction. On June 27, 2006, Plaintiff went back to Dr. Alley for a breathing check, and the physician reaffirmed his diagnoses of osteoarthrosis and chronic bronchitis, noting that Plaintiff continued to experience arthritis pain and that his shortness of breath improved with rest and albuterol treatment.

On June 26, 2006, state agency physician Dr. Mark Ruiz reviewed the medical record and opined that Plaintiff could occasionally lift up to 20 pounds and frequently lift up to 10 pounds; stand or walk for a total of 6 hours during an 8-hour workday; sit for a total of 6 hours during an 8-hour workday; push or pull without limitation; only occasionally climb ramps or stairs, balance, stoop, kneel, crouch or crawl; and never climb ladders, ropes, or scaffolds.

On August 29, 2006, Plaintiff visited Dr. Alley. His hypertension was controlled with medication, his moderately severe COPD was stable with medication, and his arthritis pain was improved by medication. Dr. Alley diagnosed Plaintiff with a circulatory system disorder.

On September 1, 2006, state agency reviewing physician Dr. J. Sands reviewed and affirmed the June residual functional capacity assessment.

On November 6, 2006, Plaintiff visited Dr. Alley. He reported dyspnea and wheezing as symptoms of his chronic bronchitis and continued unresolved arthritis pain. The physician noted that Plaintiff's edema, with pain and cramping, was mild to moderate, and recommended that he

5

elevate his lower extremities for one hour out of four during the day to try to decrease it. Plaintiff weighed 326 pounds. Dr. Alley ordered a metered dose inhaler test. It showed no evidence of reversible airway obstruction but a restrictive defect could not be excluded.

On January 4, 2007, Dr. Alley evaluated Plaintiff's chronic bronchitis, edema, and arthritis, finding them unchanged. Plaintiff also complained of memory loss and an abdominal mass that was accompanied with pain and an umbilical hernia. On March 8, 2007, Dr. Alley examined Plaintiff and concluded that his arthritis and chronic bronchitis remained unchanged.

On May 17, 2007, Plaintiff complained to Dr. Alley of new pain in his shoulders. The physician noted that Plaintiff's degenerative arthritis had worsened but his chronic bronchitis and edema remained unchanged. On August 9, 2007, Dr. Alley noted that Plaintiff's arthritis, chronic bronchitis, shoulder pain, and memory problems remained unchanged but that his edema had improved.

On September 19, 2007, Plaintiff received an eye exam from optometrist Aaron Case, who concluded that his best-corrected vision in both eyes was 20/30 and that he had visually significant cataracts in both eyes that would continue to cause a decrease in visual acuity and would most likely be eligible for surgery in two to five years.

On October 25, 2007, Dr. Alley diagnosed Plaintiff with a hernia and prostate hypertrophy causing urinary problems including nocturia. He noted that Plaintiff's arthritis and edema remained unchanged, and repeated the recommendation that Plaintiff elevate his lower extremities for one hour out of four. Dr. Alley ordered a test that showed Plaintiff's prostate specific antigen levels in the normal range.

On September 22, 2008, Plaintiff complained to Dr. Alley of worsening abdominal pain and a cough with bloody sputum for the past six months with increased blood and increased intensity over the prior six weeks. Dr. Alley diagnosed Plaintiff with hemoptysis and chest pain and found that his chronic bronchitis and prostate hypertrophy remained the same but that his hernia had worsened. Plaintiff weighed 296 pounds.

On September 26, 2008, Plaintiff received a CT scan of his chest that revealed multiple lung masses. On October 20, 2008, these masses tested positive for cancer. On October 27, 2008, Plaintiff began cancer treatment, which eventually included radiation and chemotherapy. Plaintiff weighed 286 pounds on October 27, 2008.

On November 7, 2008, Plaintiff underwent surgery to repair his umbilical hernia. On November 18, at an oncology consultation with Dr. Charles Whalen to discuss the possibility of palliative chemotherapy, the physician noted that he weighed 279 pounds, a sixty pound weight loss over the previous six months, with hemoptysis, significant dyspnea, chronic symptoms consistent with benign prostatic hyperplasia, and bone and joint pain.

On December 11, 2008, Plaintiff saw Dr. Alley for a check of his COPD, which remained stable at moderate to severe severity, and a skin lesion accompanied by pain and infection. He weighed 265 pounds, and Dr. Alley put him on a diet plan of pushing calories.

On December 24, 2008, Plaintiff went to the emergency room with chest pain consistent with a heart attack. On December 29, 2008, he was examined by Dr. Alley and given pain medication for his chest pain and pain from his terminal cancer.

On January 12, 2009, Plaintiff reported to Dr. Alley that the pain from his lung cancer was worsening and that he was also experiencing constant right arm pain. His edema had also re-

emerged.  Dr. Alley discussed the possibility of future hospice care to provide additional pain benefit.

On January 23, 2009, Plaintiff was seen by Dr. Barry Liechty at an orthopaedic clinic for a lesion and mass on his arm that was a metastasis of the cancer.

On January 29, 2009, Plaintiff went to the emergency room after he slipped and fell, causing him to experience right hip and right knee pain.  He also was diagnosed with anemia and new-onset atrial fibrillation with rapid ventricular response, and was admitted to the hospital to get his heart rate under control.  On February 3, 2009, Plaintiff was discharged to a nursing home with profound weakness, edema, and persistent pain from the lung cancer.

On May 6, 2009, Plaintiff died from complications due to cancer.

**B.**     **Hearing Testimony**

At the October 11, 2007, hearing, Plaintiff testified that he had not worked since November 2005 due to arthritis and a collapsed left foot.  He stated that he could not stand for more than ten to fifteen minutes without experiencing severe pain.  Plaintiff testified that he had worked as a toll collector with a twenty-pound lifting limitation but took disability leave following a hip replacement in November 2005 and did not return to work.  Plaintiff testified that he sometimes experienced numbness, swelling, and weakness in his hands making fine motor movements difficult. He testified that he had to elevate his legs because of severe swelling below his knees and used a cane to walk. He said that he could walk only about 150 feet.  Plaintiff testified that he had an umbilical hernia, problems controlling urination, and vision problems.  He rated his arthritic pain at a six on a scale of zero to ten and said he tried not to take too much pain medication to limit its side effects.  Plaintiff testified that he experienced episodes of shortness of breath.  He testified that he attended to his

8

personal hygiene, performed some housework but did very little cooking, drove into town two or three times per month for errands such as groceries and doctor visits, and read.

At the October 20, 2010, hearing Plaintiff's daughter testified that he began having coughing fits before 2007 and that Plaintiff's coughing aggravated his umbilical hernia. She testified that Plaintiff would cough about twenty-five to fifty percent of an hour.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618

9

(7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC

should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the date of disability onset selected by the ALJ was not supported by substantial evidence and that the ALJ did not follow the proper procedure in selecting the onset date. The Commissioner argues that the ALJ's finding was supported by substantial evidence.

When determining a claimant's disability onset date, an "ALJ is to consider: (1) the claimant's allegations as to the onset date; (2) the date that the claimant left work; and (3) medical evidence of onset. Medical evidence is the most important factor, and the chosen onset date must be consistent with it." *Henderson by Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir. 1999) (citing SSR 83-20, 1983 WL 31249 (1983); *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991); *Lichter v. Bowen*, 814 F.2d 430, 434 (7th Cir. 1987)). Furthermore, in cases where impairments get progressively worse, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling" and "[i]n such cases, it will be necessary to infer the onset date from the medical and other evidence." SSR 83-20 at *2. Accordingly, an ALJ should "consult a medical advisor in situations involving incomplete medical histories where an onset date must be inferred." *Henderson*, 179 F.3d at 513 (citing *Pugh v. Bowen*, 870 F.2d 1271, 1278 n.9 (7th Cir. 1989)). In a case where, as here, the Plaintiff challenges the ALJ's selected onset date, "the issue is whether there is substantial evidence in the record to support the date chosen by [the ALJ], not whether an earlier date could have been supported." *Henderson*, 179 F.3d at 512 (quoting *Stein v.*

12

*Sullivan*, 892 F.2d 43, 46 (7th Cir. 1989)); *see also Creasy v. Barnhart*, 30 F. App'x. 620, 624 (7th Cir. 2002).

Plaintiff argues that the ALJ guessed at the date his lung cancer became symptomatic and made that the disability onset date, without obtaining a medical opinion. Plaintiff argues that many of his physical symptoms that manifested before his cancer diagnosis may have been linked to or caused by the cancer, but that the ALJ did not consult a medical advisor to give a medical opinion either as to when the cancer may have begun growing or what symptoms it might have caused. The Commissioner argues that the ALJ considered the relevant medical evidence and hearing testimony to reach the conclusion that Plaintiff's conditions were not disabling before March 26, 2008, and that no medical advisor was needed because the medical history was not incomplete.

The ALJ's determination of the date of disability appears to be based on a series of medical appointments Plaintiff attended in September 2008. The ALJ refers to a CT scan on September 26, 2008, that revealed multiple lung masses caused by cancer, to progress notes from September 2008 reflecting that Plaintiff reported having coughing spells with bloody sputum for the previous six months, and to weight loss as of September 2008. Although it appears that the ALJ may have used the date of the physician's appointment reports and determined that Plaintiff was disabled as of the date of the reported coughing spells, six months prior to the appointment, she does not actually state that this is how she determined the date of disability. The ALJ does not point to any medical records from March, 2008, explain why March 26, 2008, has particular medical significance to Plaintiff's impairments, or otherwise create a logical bridge from the evidence she relies on to the selected onset date. Although the March onset date is not necessarily unreasonable, it is not properly supported by objective medical evidence, violating the prohibition against ALJs "mak[ing] their own

13

independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). The ALJ should have obtained medical testimony regarding the disability onset date. *See, e.g., Pierce v. Astrue*, No. 11 C 447, 2012 WL 503873, at *11, 2012 U.S. Dist. LEXIS 17979, at *30 (N.D. Ill. Feb. 14, 2012) ("The Court acknowledges that the ALJ's selection of the . . . onset date was not unreasonable from the perspective of a layperson. However, making that inference was simply outside of her province. No objective medical evidence clarifies the actual date when Claimant's hand impairment from sarcoidosis became disabling and therefore, the ALJ was required to seek input from a doctor on this crucial issue."); *Brothers v. Astrue*, No. 06 C 7088, 2011 WL 2446323, at *10, 2011 U.S. Dist. LEXIS 63848, at *26-27 (N.D. Ill. June 13, 2011) ("The court must conclude that the ALJ's determination of an onset date is not supported by substantial evidence" where "there is no evidence to support the ALJ's chosen onset date. Simply put, nothing happened on [the selected date]. The ALJ did not provide any explanation as to why that was her best guess. . . . Instead, that date appears to have been chosen because the ALJ believed that [the plaintiff] had become disabled at some point in between" the dates of two evaluations.); *Carter v. Chater*, No. 94 C 6658, 1996 WL 189326, at *5, 1996 U.S. Dist. LEXIS 4846, at *16 (N.D. Ill. Apr. 10, 1996) (remanding because "[i]t appears from the record that the onset date . . . was arbitrarily selected by the first ALJ"); *cf. Henderson*, 179 F.3d at 513 (concluding that no additional medical testimony was required because "the ALJ's determination of the onset date of [the plaintiff]'s disability is supported by substantial evidence in the record"). Accordingly, on remand, the ALJ is directed to obtain medical expert testimony regarding the course of Plaintiff's cancer and when its symptoms became disabling.

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits, or, in the alternative, reverse the decision of the ALJ and remand this matter for

additional proceedings. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. Although Plaintiff requests an award of benefits for the time between November, 6, 2005, and March 26, 2008, he fails to present a developed argument in favor of doing so. In this case, the disability onset date selected by the ALJ was not supported by substantial evidence. The medical evidence of record does not reveal an obvious alternative date of disability onset, so an outright award of benefits as of the disability onset date is not possible without additional information. Accordingly, reversal and remand for further proceedings is the proper remedy.

Plaintiff also requests attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). However, the request is incomplete. Pursuant to 28 U.S.C. § 2412(d)(1)(B), a fee application must satisfy the following requirements: (1) a showing that the applicant is a "prevailing party"; (2) a showing that the applicant is "eligible to receive an award"; (3) a showing of "the amount sought, including an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed"; and (4) an "alleg[ation] that the position of the [Commissioner] was not substantially justified." 28 U.S.C. § 2412(d)(1)(B); *see also Scarborough v. Principi*, 541 U.S. 401, 405 (2004); *United States v. Pecore*, 664 F.3d 1125, 1131 (7th Cir. 2011). Plaintiff's request fails to comply with any of these applicable requirements. Plaintiff may file a complete petition for attorney fees within thirty days of final judgment pursuant to 28 U.S.C. § 2412(d)(1)(B).

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Plaintiff's Complaint to Review Decision of Commissioner of Social Security Administration [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 2nd day of July, 2013.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record